1

2

3

4

5                       UNITED STATES DISTRICT COURT

6                            DISTRICT OF NEVADA

7   PHILIP KARTER, et al.,                    )
                                              )      Case No. 2:08-cv-00746-JCM-PAL
8                           Plaintiffs,       )
                                              )      **ORDER AND REPORT OF FINDINGS**
9   vs.                                       )          **AND RECOMMENDATION**
                                              )
10  SUNVEST COMMUNITIES USA, LLC, et al.,     )          (Mtn to Lift Stay - Dkt. #114)
                                              )
11                          Defendants.       )
    _____ )

12

13          The court held a hearing September 26, 2012, on Plaintiffs' Motion to Lift Stay, File Amended

14   Complaint, Amend Caption, and Substitute Parties Pursuant to Rule 25(c) (Dkt. #114).  Philip Karter

15   appeared on behalf of Plaintiffs.  Robert Robbins appeared on behalf of Desert Shores Holdings, LLC

16   ("Desert Shores"), and Sunvest Communities, LLC ("Sunvest"); and Anthony Celeste appeared on

17   behalf of Defendant NRT Development Advisors, LLC ("NRT").  The court has considered the Motion,

18   NRT's Response (Dkt. #119); Desert Shores' and Sunvest's Response (Dkt. #120), including the

19   Exhibits (Dkt. ##121-125, 127) and Errata (Dkt. #137); Defendant Countrywide Home Loans, Inc.'s

20   ("Countrywide") Joinder (Dkt. #126); NRT's Joinder (Dkt. #130); Plaintiffs' Reply (Dkt. #136); and

21   the arguments of counsel made on the record at the hearing.

22                                  **BACKGROUND**

23   **I.    Procedural History.**

24          Plaintiffs filed the complaint in state court, and on June 9, 2008, Defendant NRT filed a Petition

25   for Removal (Dkt. #1).  The named Plaintiffs filed suit on behalf of themselves and others similarly

26   situated, asserting claims against Defendants for rescission, breach of contract, fraud, violation of

27   Nevada's Deceptive Trade Practices Act, violation of Nevada's Civil Racketeering Act,

28   misrepresentation, breach of express warranty, breach of implied warranty, breach of fiduciary duty,

and conspiracy.  The complaint arises out of Plaintiffs' purchase of condominium units at the Desert Shores Villas from Sunvest and Desert Shores, the sellers (together, "the Arbitration Defendants"). Plaintiffs entered into nearly identical purchase agreements, which were drafted by the Arbitration Defendants.  Each purchase agreement contained an arbitration provision requiring that any claims, controversies, breaches, or disputes arising out of or related to the purchase agreement be arbitrated pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq.  On September 26, 2008, Plaintiffs filed a Motion to Compel Arbitration (Dkt. #41), seeking to compel arbitration with the Arbitration Defendants and to stay the case as to the non-Arbitration Defendants.  Countrywide opposed the stay, requesting the court dismiss the Complaint against it and offering to dismiss its counterclaims. After hearing oral argument, the court entered an Order (Dkt. #58) on November 25, 2008, compelling arbitration of Plaintiffs' claims against the Arbitration Defendants and staying Plaintiffs claims against the other Defendants pending arbitration.  The court held periodic status checks regarding the status of arbitration.  *See generally* Minutes of Proceedings (Dkt. ##72, 74, 81).  On June 21, 2010, Plaintiffs filed a Motion to Rescind Order of Arbitration and Lift Stay (Dkt. #94).  In an Order (Dkt. #97) entered July 23, 2010, the court denied the Motion and directed the Plaintiffs and the Arbitration Defendants to complete arbitration.

On December 8, 2011, District Judge Mahan entered an Order to Show Cause (Dkt. #102) why this case should not be dismissed for Plaintiffs' failure to prosecute.  The parties responded (Dkt. ##104, 105), informing the court that the arbitration hearing was scheduled for February 20, 2012.  On March 7, 2012, the district judge entered an Order (Dkt. #108) directing the parties to file a joint status report detailing the outcome of the arbitration.  The parties did not file a joint status report because they were unable to agree on the content of a joint submission.  They filed separate Status Reports (Dkt. ##110, 111, 112) informing the court that the February 20, 2012, arbitration hearing was continued at the request of Plaintiffs' counsel.  *See* Status Report (Dkt. #110).  The arbitrator granted Plaintiffs' request and continued the arbitration hearing until April 17, 2012.  *Id.*  Shortly thereafter, Plaintiffs' counsel  advised the arbitrator that the Arbitration Defendants were dissolved and defunct and that he had informally asked this court to move the case from arbitration into the federal court because there were no arbitrable claims remaining.  After receiving this information from counsel for Plaintiffs, the

2

1   arbitrator issued an order suspending arbitration on April 12, 2012.  The arbitrator's order, attached as

2   Exhibit 1 to the Arbitration Defendants' Supplement (Dkt. #112), observed that the arbitration was "fast

3   becoming an exercise in futility," especially in light of Plaintiffs' informal request to the court to move

4   the matter back to federal court.  *Id.*  The arbitrator suspended further arbitration "pending

5   determination by the federal court of its position in this matter."  *Id.*

6        On April 20, 2012, the district judge entered an Order (Dkt. #113) directing Plaintiffs file an

7   appropriate motion with the court.  The instant Motion to Lift Stay followed.

8   **II.**    **The Parties' Positions.**

9       **A.**    **Plaintiffs' Motion to Lift Stay (Dkt. #114).**

10        Plaintiffs seek an order: (a) lifting the stay imposed by the court's November 25, 2008, Order;

11   (b) granting leave to file a second amended complaint; and (c) substituting parties pursuant to Rule

12   25(c) of the Federal Rules of Civil Procedure.  Plaintiffs assert that various principals of the Arbitration

13   Defendants fraudulently stripped the companies of assets between 2005 and 2007, rendering them

14   defunct.  Plaintiffs seek leave to file a second amended complaint substituting those principals–Harvey

15   Birdman, Herbert Hirsch, Dianne Birdman, Bonita Hirsch, and Harris Friedman (the "Proposed

16   Defendants")–pursuant to Rule 25(c) of the Federal Rules of Civil Procedure in the place of the

17   Arbitration Defendants.  Plaintiffs contend the Proposed Defendants directly or indirectly owned

18   interests in the Arbitration Defendants and are either the successors-in-interest, alter egos, or fraudulent

19   transferees of the Arbitration Defendants.  By stripping the Arbitration Defendants of assets, Plaintiffs

20   argue, the Proposed Defendants stand in the shoes of the Arbitration Defendants.  Substitution under

21   Rule 25(c) is the only way Plaintiffs can prosecute their claims because the Arbitration Defendants are

22   defunct.

23        However, the Proposed Defendant are not signatories to the arbitration agreement, and as a

24   result, the arbitrator does not have jurisdiction over them or Plaintiffs' claims against them.  Plaintiffs

25   assert they "no longer intend to pursue their claims against the now-defunct Arbitration Defendants,"

26   and there is nothing further to arbitrate.  Motion at 3:12-13.  Thus, the stay should be lifted so that

27   Plaintiffs can prosecute their claims against the Proposed Defendants and the non-Arbitration

28   / / /

3

Defendants in this forum.[1]  Plaintiffs argue the Arbitration Defendants will not be prejudiced by amendment because the Arbitration Defendants' own conduct caused the delay in arbitrating this case and because they are defunct.  With respect to the non-Arbitration Defendants, Plaintiffs have learned information that will clarify the nature of Plaintiffs' claims, and allowing amendment will streamline disposition of this matter.  Finally, certain individual Plaintiffs no longer wish to participate in this litigation, and the amended pleading will remove those Plaintiffs.

### B.   The Arbitration Defendants' Response (Dkt. #120).

The Arbitration Defendants oppose the motion and seek an order dismissing Plaintiffs' Amended Complaint (Dkt. #59) because Plaintiffs have not diligently prosecuted their claims.  The Arbitration Defendants contend Plaintiffs have delayed arbitration, engaged in abusive discovery practices, and raised frivolous arguments regarding the Arbitration Defendants' corporate dissolutions in the instant Motion.  Plaintiff Philip Karter, who is also Plaintiffs' counsel, is responsible for substantial delays in this case.  He received numerous extensions from the arbitrator to produce discovery, received several postponements of the arbitration hearing, and allowed the case to become inactive on several occasions during the arbitration process.  The Arbitration Defendants cite a period of inactivity between December 7, 2010, and March 18, 2011, as an example of Plaintiffs' failure to prosecute.  As a result of this inactivity, the AAA held the case in abeyance.  The opposition contains a chart listing all of the delays the Arbitration Defendants claim were caused by the Plaintiffs and counsel for Plaintiffs, Mr. Karter.

The Arbitration Defendants assert Plaintiffs' counsel has also engaged in abusive discovery practices.  Many Plaintiffs failed to respond to the Arbitration Defendants' interrogatories, despite being granted extensions of nearly two years.  The Arbitration Defendants also assert that Mr. Karter cancelled his and another Plaintiff's deposition the day before they were noticed to begin and only weeks before the arbitration hearing was to begin.  A number of the Plaintiffs ignored several discovery requests outright, failing to produce documents in their possession that they referred to in depositions.

---

[1] Plaintiff asserts that although some of the Proposed Defendants reside in the same state as some of the Plaintiffs, the court will not be divested of diversity jurisdiction because federal jurisdiction is tested according to the facts in existence when the case was filed.

1  Mr. Karter did not require his clients review their discovery responses, and he even drafted some

2  Plaintiffs' responses and submitted them to defense counsel without those Plaintiffs' knowledge.  As a

3  sanction, the arbitrator dismissed a number of the Plaintiffs who failed to participate in discovery.

4      With respect to Plaintiffs' argument that the Arbitration Defendants are defunct, both Florida

5  and Nevada law[2] provide that a dissolved company can be sued and can participate in arbitration.  *See*

6  NRS 86.505 ("[t]he dissolution of a limited-liability company does not impair any remedy or cause of

7  action available to or against it or its managers or members arising before its dissolution and

8  commenced within two years after the date of dissolution"); F.S.A. § 608.4431(2)(b) ("[d]issolution of

9  a limited liability company does not . . . prevent commencement of a proceeding by or against the

10  limited liability company in its name").  Desert Shores was dissolved in May 2008.  The Amended

11  Complaint alleges that Plaintiffs' claims arose during May 2005.  Thus, the claims against Desert

12  Shores arose before its dissolution, and NRS 86.505 allows Plaintiffs' claims to proceed against Desert

13  Shores. It specifically provides that Plaintiffs recover against Desert Shores despite Desert Shores'

14  dissolution.  Similarly, F.S.A. § 608.4431(2)(b) permits Plaintiffs to prosecute their claims against

15  Sunvest despite its dissolution.  Plaintiffs have been aware since September 2009 that Sunvest was

16  suffering financial problems, as evidenced by an email Plaintiffs' former counsel, Mr. Eric Fox, sent to

17  Mr. Karter on September 22, 2009, discussing Sunvest's precarious financial condition.  The

18  Arbitration Defendants have attached additional documents as Exhibit 1 to their response in which they

19  assert Mr. Karter acknowledged his awareness of Sunvest's finances.

20      The Arbitration Defendants argue that Plaintiffs' dilatory conduct and discovery abuses should

21  preclude a further amendment under Rule 15 of the Federal Rules of Civil Procedure.  Additionally,

22  amendment would be futile with respect to Plaintiffs' claims under NRS Chapter 116 which requires a

23  litigant to be a unit owner, because some of the Plaintiffs, including Mr. Karter, no longer own

24  condominium units at Desert Shores Villas. Substitution under Rule 25 is equally inappropriate where,

25  as here, Plaintiffs are statutorily permitted to bring claims against dissolved corporations.

26

27      [2]Sunvest is a Florida limited liability corporation, and Desert Shores is a Nevada limited liability

28  corporation.

5

**C.    NRT's Response (Dkt. #119).**

Relying on NRS 86.505 and F.S.A. 608.4431(2), NRT contends Plaintiffs' Motion should be denied because a dissolved company continues for the purpose of prosecuting or defending a lawsuit, and substitution is, therefore, unnecessary.  Additionally, if the court allows substitution of the Proposed Defendants, they would assume the same rights and obligations of the Arbitration Defendants, including the rights and obligations created by the purchase agreements at issue that contain the arbitration requirement. NRT also filed a joinder to the Arbitration Defendants' Response (Dkt#130).

**D.    Plaintiffs' Reply (Dkt. #136).**

Plaintiffs contend they are not bound to arbitrate their claims against the Arbitration Defendants because the Arbitration Defendants failed to comply with NRS 86.531(d).  That provision requires a limited liability company preparing its articles of dissolution to certify that "adequate provision has been made for the satisfaction of any judgment, order or decree which may be entered against it in any pending suit."  NRS 86.531(d).  The Arbitration Defendants did not make adequate provision for a judgment in this case in compliance with NRS 86.531(d), and therefore, they cannot rely on NRS 86.505.  Although Desert Shores' Articles of Dissolution state that adequate provision for the satisfaction of any judgment was made, Plaintiff contends "it simply is not true."  Reply at 6:7.

Relying on the Ninth Circuit's decision in *Carpenters 46 Northern California Counties Conference Board v. Zcon Builders*, 96 F.3d 410, 414-16 (9th Cir. 1996), Plaintiffs contend that the arbitrator cannot compel the Proposed Defendants to arbitrate.  Whether the Proposed Defendants are subject to the arbitration provision is a matter of arbitrability and is a decision for the courts, not the arbitrator.  The arbitrator recognized this, and as a result, he entered the April 12, 2012, order staying the arbitration.  *See* Supplement (Dkt. #118) at Exhibit 1 ("Under the circumstances and because it appears that the [Plaintiffs'] counsel has informally asked the Federal Court to move the matter back to the Federal Courts because there are no arbitrable Respondents left and to avoid further expense to the litigants, the Arbitrator is suspending any further activity on this case pending determination by the Federal Courts of its position in this matter").  Plaintiffs assert the court should determine whether Desert Shores' violation of NRS 86.531 invalidates the agreement to arbitrate.

/ / /

6

Alternatively, if the court allows substitution of the Proposed Defendants but compels Plaintiffs to arbitrate their claims against the Proposed Defendants, Plaintiffs ask that the court lift the stay as to Plaintiff's claims against NRT and Countrywide because those claims are severable.  Plaintiffs assert NRS 38.221(7) allows to the court to limit the scope of the stay as to only Plaintiffs' claims against the Proposed Defendants.  Finally, Plaintiffs dispute the Arbitration Defendants' characterization of Mr. Karter's and the Plaintiffs' conduct, asserting they did not postpone depositions improperly.  Plaintiffs do not admit to engaging in abusive discovery practices.

## DISCUSSION

For the reasons set forth below, the court finds Plaintiffs have not diligently prosecuted this case as required by Rule 41(b) of the Federal Rules of Civil Procedure or complied with multiple Orders of this court and recommends that Plaintiffs' case be dismissed.

**I.    Findings.**

Having reviewed and considered the moving and responsive papers, and the entire record in this case, the court makes the following findings:

1.    Plaintiffs filed the complaint in state court on April 24, 2008.  *See* Exhibit A to Defendant NRT's Petition for Removal (Dkt. #1).

2.    The named Plaintiffs filed suit on behalf of themselves and others similarly situated, asserting claims against Defendants for rescission, breach of contract, fraud, violation of Nevada's Deceptive Trade Practices Act, violation of Nevada's Civil Racketeering Act, misrepresentation, breach of express warranty, breach of implied warranty, breach of fiduciary duty, and conspiracy.  *Id.*

3.    The complaint arises out of Plaintiffs' purchase of condominium units at the Desert Shores Villas from Sunvest and Desert Shores (together, the "Arbitration Defendants"), the sellers.  *Id.*  In conjunction with those purchases, Plaintiffs entered into nearly identical purchase agreements, which were drafted by the Arbitration Defendants.  Each purchase agreement contained an arbitration provision requiring that any claims, controversies, breaches, or disputes arising out of or related to the purchase agreement be arbitrated pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq.  *Id.*

7

4.     On June 9, 2008, Defendant NRT removed Plaintiffs' complaint to this court, asserting the court had original jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2). *See* Notice of Removal (Dkt. #1).

5.     Plaintiffs filed a Motion to Compel Arbitration (Dkt. #41) on September 26, 2008, asserting that the court should (a) compel arbitration of Plaintiffs' claims against the Arbitration Defendants; and (b) stay the case as to the non-Arbitration Defendants pursuant to the FAA. *See* Motion to Compel (Dkt. #41).

6.     The Arbitration Defendants initially opposed the Motion to Compel Arbitration, asserting Plaintiffs waived their right to arbitrate by filing this lawsuit. During oral argument, however, both Plaintiffs and the Arbitration Defendants agreed to submit to arbitration. *See* Order (Dkt. #97) at 2:23-27.

7.     On November 25, 2008, the court entered an Order (Dkt. #58) compelling arbitration of Plaintiffs' claims against the Arbitration Defendants and staying Plaintiffs' claims against the remaining Defendants pending arbitration. *See* Order (Dkt. #58).

8.     The court held periodic status checks regarding the status of arbitration. *See generally* Minutes of Proceedings (Dkt. ##72, 74, 81, 90).

9.     At the June 2, 2009, status conference, counsel for the parties represented it would take approximately six months to prepare and schedule this case for arbitration. *See* Minutes of Proceeding (Dkt. #72).

10.     At the August 18, 2009, conference, counsel informed the court that arbitration was not yet complete. The court reminded counsel that claims against the non-Arbitration Defendants were stayed until arbitration concluded and required the parties to exercise their best faith effort to complete arbitration within ninety days. *See* Minutes of Proceeding (Dkt. #74).

11.     In September 2009, the parties had still not selected an arbitrating body (i.e., the AAA or a private arbitrator) or an arbitrator. *See* Plaintiffs' Response to Order to Show Cause (Dkt. #105). At the same time, Plaintiffs' former counsel emailed Mr. Karter and advised him that Sunvest had minimal funds to defend this case, Sunvest's counsel

expected to seek leave to withdraw, and when Sunvest's defense funds were exhausted, Plaintiff could "probably" seek default judgment against Sunvest. *See* Exhibit A to Plaintiffs' Response to Order to Show Cause (Dkt. #105).

12.   On October 9, 2009, the parties selected Charles W. Deaner as arbitrator, and the AAA issued a letter confirming Mr. Deaner's selection on October 20, 2009. *See* Letter, attached as Exhibit B to Plaintiffs' Response to Order to Show Cause (Dkt. #105).

13.   Mr. Karter filed a Verified Petition for Permission to Practice Pro Hac Vice (Dkt. #76) November 10, 2009.

14.   On November 10, 2009 the parties also filed a Joint Status Report (Dkt. #75), advising the court that an arbitration hearing was scheduled for February 8, 2010.

15.   In an order entered December 21, 2009, the arbitrator allowed Plaintiffs to seek reciprocal discovery from the Arbitration Defendants and continued the arbitration hearing until April 12, 2010, at the request of counsel for the Plaintiffs. *See* Order, attached as Exhibit D to Plaintiffs' Response to Order to Show Cause (Dkt. #105). The Order indicates that Mr. Karter advised the arbitrator and counsel for the Arbitration Defendants that Plaintiffs had discharged the law firm of Marquis & Aurbach as their attorneys. *Id*. Mr Karter also expressed concern that the Plaintiffs would be unable to answer the interrogatories which should have been answered by December 4, 2009, according to the arbitrator's scheduling order. *Id.* The arbitrator's order reported that Mr. Karter indicated that the interrogatories had not been answered "because of differences with the Las Vegas law firm and the multi-state residence of the Claimants." *Id*. The Plaintiffs were ordered to respond to interrogatories and to provide an initial list of witness and exhibits no later than January 15, 2010. *Id*. The Plaintiffs were also given leave to serve thirty  interrogatories on the Arbitration Defendants on or before January 15, 2010. *Id*. The Arbitration Defendants were given until February 1, 2010, to respond. *Id*.

16.   The arbitration parties then engaged in discovery. *See generally* Plaintiffs' Response to Order to Show Cause (Dkt. #105).

17.  In a Minute Order (Dkt. #77) entered November 17, 2009, District Judge Mahan directed Mr. Karter to file an amended verified petition to practice pro hac vice because Mr. Karter had not responded to Question Nine in his original petition.  *Id.*

18.  Mr. Karter complied on November 30, 2009.  *See* Notice of Corrected Image (Dkt. #79).

19.  On February 3, 2010, the arbitrator issued a letter stating that because of uncertainty over Mr. Karter's ability to represent the Plaintiffs in arbitration, "the matter is now out of my hands . . . [and u]ntil the matter is resolved either by the Federal Court in Las Vegas or the State Bar of Nevada or both, I cannot proceed with the Arbitration."  *See* Letter, attached as Exhibit G to Plaintiffs' Response to Order to Show Cause (Dkt. #105).

20.  At the February 23, 2010, status conference before this court, counsel represented that in addition to certain discovery disputes, the arbitration could not proceed because Mr. Karter's Verified Petition for Permission to Practice Pro Hac Vice (Dkt. #76) had not been approved, and Mr. Karter is not a licensed attorney in Nevada.  *See* Minutes (Dkt. #81).  The court directed Mr. Karter to file an amended verified petition specifying the parties he intended to represent within fourteen days.  *Id.*

21.  Mr. Karter complied on March 9, 2010.  *See* Notice of Corrected Image (Dkt. #82).

22.  In an Order (Dkt. #86) entered March 15, 2010, the district judge granted Mr. Karter's Verified Petition, over the limited objections of Desert Shores and Countrywide.

23.  On March 17, 2010, Desert Shores and Countrywide filed a Joint Motion (Dkt. #87) requesting the district judge reconsider his Order approving Mr. Karter's Verified Petition.

24.  The district judge denied the Joint Motion to Reconsider in an Order (Dkt. #93) entered May 18, 2010.

25.  On June 21, 2010, Plaintiffs filed a Motion to Rescind Order of Arbitration and Lift Stay (Dkt. #94).

26.  In an Order (Dkt. #97) entered July 23, 2010, the court denied Plaintiffs' Motion to Rescind and ordered the Plaintiffs and the Arbitration Defendants to complete arbitration.  *See* Order (Dkt. #97) at 3:1-10.

10

27.  Between December 2010 and February 2012, the arbitration parties engaged in discovery, and the arbitrator decided a number of the parties' disputes. *See generally* Plaintiffs' Response to Order to Show Cause (Dkt. #105), and the parties' March, 2012 status reports (Dkt ## 109, 110,111 &112).

28.  In an order entered September 13, 2011, the arbitrator warned that any Plaintiff who failed to comply with their discovery obligations by mid-October 2011 would barred from arbitration. *See* Order, attached as Exhibit W to Plaintiffs' Response to Order to Show Cause (Dkt. #105).

29.  After more than ten months of inactivity in this federal case, District Judge Mahan entered an Order (Dkt. #99) on May 24, 2011, directing the parties to file a joint status report advising the court about the status of arbitration.

30.  The parties complied on June 7, 2011, and advised the court about their various discovery disputes in the arbitration, and informed the court that the arbitration had been held in abeyance by the AAA because, according to the AAA, "[t]here has been very little activity on this matter.  We suggest that this matter be held in abeyance if the parties are not ready to proceed at this time."  Joint Status Report (Dkt. #100).

31.  Six months later, on December 8, 2011, the district judge entered an Order to Show Cause (Dkt. #102) why this case should not be dismissed for Plaintiffs' failure to prosecute.

32.  On December 22, 2011, Plaintiffs' former counsel, Mr. Eric Fox, filed a Motion to Withdraw as Attorney (Dkt. #103).

33.  The parties each responded to the Order to Show Cause on December 22, 2011, and informed the court that the arbitration hearing was scheduled for February 20, 2012. *See* Responses (Dkt. ##104, 105); Order (Dkt. #107).

34.  On December 27, 2011, the undersigned denied Mr. Fox's Motion to Withdraw because he did not provide proof of service of the Motion on the Plaintiffs and did not provide the Plaintiffs' last known addresses. *See* Order (Dkt. #106).

/ / /

35. Mr. Karter filed a Notice of Appearance (Dkt. #107) on behalf of the Plaintiffs on January 13, 2012.

36. On February 23, 2012, Plaintiffs counsel sent a letter to counsel for the Arbitration Defendants, Mr. Robbins, advising him that in light of the Arbitration Defendants' dissolution, Plaintiffs would not submit to the final two depositions noticed by the Arbitration Defendants. *See* Letter, attached as Exhibit D to Plaintiffs' Status Report (Dkt. #110). The depositions were scheduled for the following day, February 24, 2012. *Id*. The letter stated, "the scheduling of these depositions will have to be delayed at least until a hearing with Arbitrator Deaner can be held to address the matter discussed below." *Id.* The letter then addressed counsel for Plaintiffs' contention that Plaintiffs were unaware that the two named Arbitration Defendants were defunct legal entities until taking the deposition testimony of Messrs. Harvey Birdman, Louis Birdman, Herbert Hirsch, and Harris Friedman the previous week. *Id.* The letter acknowledged that counsel for the Arbitration Defendants had previously represented both to Mr. Karter and Mr. Eric Fox that the Arbitration Defendants were in precarious financial state. *Id*. However, the letter also indicated that Mr. Karter did not "recall ever being advised that the companies no longer existed and had not, in fact, for some time." *Id*.

37. Mr. Karter's February 23, 2012, letter to counsel for the Arbitration Defendants also indicated that copies of his correspondence were sent to Arbitrator Deaner and the manager of ADR Services for the American Arbitration Association, and that Mr. Karter would be requesting a hearing before the arbitrator "to address, and hopefully resolve, the representation and jurisdictional issues discussed" in the letter. *Id.*

38. On March 7, 2012, the district judge entered an Order (Dkt. #108) directing the parties to file a joint status report detailing the outcome of the arbitration.

39. The parties did not file a joint status report as ordered because they were unable to agree on the contents of a submission, and they filed separate Status Reports (Dkt. ##109,110, 111, 112). Among other things, they informed the court that the arbitration hearing had been continued at Plaintiffs' request until April 17, 2012. *See* Arbitrator's Order,

12

attached as Exhibit B to Plaintiffs' Status Report (Dkt. #110).

40.   After Arbitrator Deaner received the Plaintiffs' February 23, 2012, letter, and was apprised that counsel for Plaintiffs "has informally asked the Federal Court to move the matter back to the Federal Courts because there are no arbitrable Respondents left and to avoid further expense to the litigants" the arbitrator issued an order suspending arbitration on April 12, 2012. *See* Order, attached as Exhibit 1 to the Arbitration Defendants' Supplement (Dkt. #112). The arbitrator's order observed that the arbitration was "fast becoming an exercise in futility." He therefore suspended "any further activity on this case pending determination by the Federal Courts of its position in this matter." *Id.*

41.   On April 20, 2012, the district judge entered an Order (Dkt. #113) directing Plaintiffs file an appropriate motion with the court. The instant Motion to Lift Stay (Dkt. #114) followed.

42.   On May 17, 2012, Messrs. Fox and Higbee filed a Motion to Withdraw (Dkt. #129) on the grounds they had not received payment for attorneys fees expended in excess of $12,000.00. The motion also represented that Plaintiffs had retained Brent Carson of the local firm of Winner & Carson. The court granted the motion to withdraw on May 23, 2012. *See* Order (Dkt. #134).

## II.   Analysis and Conclusion.

The court recognizes that the recommendation of dismissal is a harsh sanction and does not recommend it to the district judge lightly. However, this case has been on the court's docket for more than four years, and is no closer to resolution than the day it was removed on June 9, 2008. There comes a point on the court's congested docket when enough is enough. A large amount of judicial resources have been devoted to attempting to move this case towards final resolution. Granting Plaintiffs' current motion would result in starting entirely over.

Counsel for Plaintiffs have known since September 2009, about the Arbitration Defendants' precarious financial condition. The court accepts Mr. Karter's representation that until he took the deposition of individual principals of the Arbitration Defendants in February 2012, he was not aware

1    that they had filed articles of dissolution.  However, as the Arbitration Defendants point out in

2    opposition to the current motion, a routine, free, and online check with the Secretary of State would

3    have revealed this information.  Of course, counsel for Plaintiffs could also simply have inquired of

4    opposing counsel of their corporate status after being advised in September 2009, that the Arbitration

5    Defendants had only approximately $20,000.00 to spend to defend Plaintiffs' claims in arbitration.

6    They did neither.

7         Plaintiffs' motion now seeks to abandon all claims against the Arbitration Defendants.

8    Plaintiffs have not asked the Arbitration Defendants to stipulate to a voluntary dismissal.  Rather, they

9    simply seek to "drop" the Arbitration Defendants from their complaint, substituting in their place six

10   individuals who are Florida residents who are alleged to have "directly or indirectly owned" the

11   Arbitration Defendants "through one or more other limited liability companies, trusts or other business

12   entities."  *See* Proposed Second Amended Complaint, ¶28, attached as an exhibit to Plaintiff's Motion

13   (Dkt. #114).  One of these individuals is alleged "on information and belief" to have either "owned or

14   held a managerial position with Desert Shores Holdings, LLC, and possibly other SUNVEST entities

15   directly or indirectly involved with Desert Shores."  *Id*.  Plaintiffs' motion proposes substituting these

16   individuals as Defendants under Rule 25(c) to allow a continuation of this action because "on

17   information and belief, they each also withdrew substantial sums of money from at least one of the

18   Arbitration Defendants, Desert Shores Holding, LLC, at a time when that entity had a legal obligation

19   to fund the homeowners association at Desert Shores Villas."  *See* Motion (Dkt. #114) at 5:18-23.  As

20   counsel for Plaintiffs confirmed during oral argument on the motion, the claims against these

21   individuals are all based on what they did or did not do in 2005 and 2006, or 2007 at the latest, long

22   before the initial complaint in this case was filed in state court.  Plaintiffs claim that allowing

23   substitution under Rule 25(c) will facilitate the conduct of this case and expedite and simplify this

24   action.  The court disagrees.

25        Plaintiffs' proposed second amended complaint would also "drop" a number of Plaintiffs from

26   this action.  The motion states that counsel for Plaintiffs is advised that a number of individual

27   Plaintiffs no longer wish to participate in this litigation, or have repeatedly failed to communicate their

28   intentions after multiple inquiries.  *Id*. at 5:5-7.  It is undisputed that a number of the Plaintiffs were

14

1   already stricken from the arbitration because of their failure to respond to written discovery and
2   participate as ordered by the arbitrator.  Before striking their claims the arbitrator warned them their
3   claims would be stricken if they failed to comply with their discovery obligations and participate.  If the
4   court granted the relief Plaintiffs request, they would essentially be allowed a "do over"–to abandon the
5   case they filed and start over with a new cast of characters.  The Plaintiffs have not yet established that
6   the Arbitration Defendants are liable, yet they wish to substitute individuals who stand in their shoes on
7   alter-ego and other theories.  Allowing Rule 25(c) substitution of parties will not expedite or simplify
8   this action.  It will make it more complex and time consuming as Plaintiffs attempt to prove that the six
9   individual proposed Defendants are responsible for the Arbitration Defendants' as yet unproven
10  liability.

11          The court granted Plaintiffs' motion to compel the Arbitration Defendants to arbitrate, and to
12  stay this action as to the non-Arbitration Defendants on November 25, 2008.  It took nearly a year for
13  the arbitration parties to agree on an arbitrator.  At the June 2, 2009, status conference, counsel for the
14  parties advised the court that they believed it would take approximately six months to prepare and
15  schedule this case for arbitration.  *See* Minutes of Proceedings (Dkt. #72).  The court continued the
16  matter for a further status conference on August 18, 2009.  At that status conference, the undersigned
17  reminded counsel that the claims against the non-Arbitration Defendants were stayed, and directed that
18  the parties exercise their best efforts to complete arbitration within ninety days.  *See* Minutes of
19  Proceedings (Dkt. #74).  It was not until October 9, 2009, that the parties agreed to the American
20  Arbitration Association, and Charles W. Deaner to serve as an arbitrator in this action.  The record does
21  not support a finding that the Plaintiffs were solely responsible for this initial 11-month delay in
22  selecting an arbitrator.  However, the Plaintiffs were clearly on notice that the court was dissatisfied
23  about the parties' progress, and the prolonged period the case had been stayed against the non-
24  Arbitration Defendants.

25          During oral argument, counsel for Plaintiffs made it clear that he was disagreed with some of
26  the decisions made by prior counsel.  He made a point of telling the court that he was not the attorney
27  who filed the motion to compel arbitration.  He also advised the court that he disagreed with the
28  decision to request arbitration without discovery.  On October 28, 2009, the arbitrator issued an order

15

1    permitting the Arbitration Defendants to serve Plaintiffs with interrogatories.  *See* Plaintiffs' Response

2    to Order to Show Cause (Dkt. #105) 4:19-24.  A copy of the arbitrator's order was attached as an

3    exhibit to Plaintiffs' response to the order to show cause.  Plaintiffs' counsel did not receive reciprocal

4    discovery because counsel for Plaintiffs did not ask for any discovery.  At a December 21, 2009,

5    hearing before the arbitrator, Mr. Karter requested and received the arbitrator's approval for Plaintiffs to

6    take reciprocal discovery from the Arbitration Defendants.  *Id*. at 5:11-17.  A copy of the arbitrator's

7    order permitting reciprocal discovery was attached as Exhibit D to Plaintiffs' response to the order to

8    show cause.  The order postponed the arbitration hearing originally scheduled for February 8, 2010, to

9    April 12, 2010.  *Id*.  The arbitrator set a January 15, 2010, deadline for Plaintiffs to serve discovery, and

10   a February 1, 2010, deadline for Defendants to respond.  *Id*.

11       The arbitration parties engaged in what appears to be contentious discovery between December

12   2010, and February 2012, and the arbitrator decided a number of the parties' disputes.  *See generally*

13   Plaintiff's Response to Order to Show Cause (Dkt. #105, and the parties' March, 2012 status reports to

14   the court (Dkt ##109,110,111 &112).  On June 21, 2010, Plaintiffs filed a Motion to Rescind the Order

15   of Arbitration, and Lift Stay (Dkt. #94).  The motion argued the court should rescind the order of

16   arbitration and asked that the court now supervise Plaintiffs' claims against the Arbitration Defendants.

17   The motion argued that the purpose of arbitration could no longer be achieved because the Defendants

18   had been responsible for delay in the preceding eighteen months, and Plaintiffs were no longer able to

19   achieve a cost-effective and speedy resolution of their claims against the Arbitration Defendants

20   through arbitration.

21       The motion to rescind complained that discovery disputes had raised the cost of proceeding in

22   arbitration, and that restoring the case to the court's docket would hold down costs because "Plaintiffs

23   are not paying counsel for attorney time, nor would they be obligated to pay an arbitrator's fee."  The

24   motion indicated that the Arbitration Defendants' counsel had claimed insolvency.  *Id*. at 8:3-4.

25   Plaintiffs argued that they needed discovery to test the legitimacy of this claim, and that "it would be

26   foolhardy for Plaintiffs to incur the costs associated with the arbitration proceeding without being in a

27   position to verify the claims of Sunvest and Desert Shores' counsel that his clients are essentially

28   insolvent."  *Id*. at 8:5-9.  Finally, Plaintiffs argued that the only way they could be assured that their

1   discovery rights would be respected, including the right to verify Sunvest's and Desert Shores' claims

2   of insolvency, was "to restore judicial supervision over the matter to the District Court." *Id*. at 9-12.

3   The court denied the motion to rescind the order and ordered the Plaintiffs to arbitrate because the

4   parties' agreements required arbitration under the FAA and the Supreme Court has made it abundantly

5   clear that arbitration agreements should be rigorously enforced. *See,* e.g., *Shearson/Am. Express, Inc. v.*

6   *McMahon,* 482 U.S. 220, 226-27 (1987). Additionally, the Plaintiffs cited no legal authority

7   supporting their request for the court to rescind an order compelling the parties to comply with their

8   agreement to arbitrate based on a party's asserted insolvency.

9       Two orders to arbitrate, multiple status conferences, and an order to show cause why the case

10  should not be dismissed for failure to prosecute have thus far been ineffective in compelling the

11  Plaintiffs to arbitrate as they initially requested, and the court ordered. Although the Plaintiffs and their

12  counsel are not responsible for all of the delay, they are clearly responsible for the arbitration not

13  proceeding as scheduled on February 20, 2012, which was continued at counsel for Plaintiffs' request.

14  Plaintiffs are also clearly responsible for the arbitration not proceeding as scheduled on April 17, 2012.

15  As Plaintiffs' own filings make clear, there were only two Plaintiffs' depositions which remained to be

16  taken on February 24, 2012, when counsel for Plaintiffs, Mr. Karter, sent his February 23, 2012, letter

17  to opposing counsel and the arbitrator indicating he would not agree to the final two depositions going

18  forward. One of those two depositions was for Mr Karter, who is both a Plaintiff and counsel for the

19  Plaintiffs. Mr Karter's February 23, 2012 letter also stated that he wanted a hearing before the

20  arbitrator to inquire about the legal status of the Arbitration Defendants, and whether "there remains

21  any arbitration jurisdiction over the matter given that there is no legally existing Arbitration Defendant,

22  nor any identified successor-in-interest." *See* Plaintiffs' Status Report (Dkt. #110), Exhibit D.

23      This action was taken after the district judge entered his December 8, 2011, Order to Show

24  Cause why this case should not be dismissed for Plaintiffs' failure to prosecute. It was also after the

25  parties had advised the court in their separate status reports that the arbitration was scheduled for

26  February 20, 2012, and then continued to April 17, 2012, at Plaintiffs' request. Understandably, when

27  the arbitrator learned that the Plaintiffs had again asked this court to move the matter back to federal

28  court, the arbitrator issued his April 12,2012 order suspending the April 17, 2012, arbitration,

17

1   concluding arbitration was "fast becoming an exercise in futility."  The Arbitration Defendants'

2   asserted insolvency was one of the primary reasons cited by the Plaintiffs nearly two years earlier for

3   returning the case to federal court, and certainly not a new issue.

4        Rule 41 of the Federal Rules of Civil Procedure requires that Plaintiffs prosecute their claims

5   and authorizes involuntary dismissal for failure to prosecute or comply with a court order.  The

6   Defendants' opposition requests dismissal.  However, even in the absence of a motion to dismiss, the

7   court has the inherent power to dismiss a case for lack of prosecution *sua sponte*.  *Henderson v.*

8   *Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986).

9        Rule 16(f) of the Federal Rules of Civil Procedure also authorizes the court to impose sanctions

10  on a party's motion or on its own, including any sanctions authorized by Rule 37(b)(2)(A)(ii-vii), if a

11  party or its attorney fails to obey a pretrial order.  *Id.*  The available sanctions include, among other

12  things, striking a party's pleadings in whole or in part.  Fed.R.Civ.P. 37(b)(2)(A)(iii).  Rule 16(f) gives

13  the court broad discretion to sanction attorneys and parties who fail to comply with reasonable pretrial

14  orders of the court to insure that they "fulfill their high duty to insure the expeditious and sound

15  management of the preparation of cases for trial."  *Matter of Sanctions of Baker*, 744 F.2d 1438, 1440

16  (10th Cir. 1994) (en banc).  The Ninth Circuit has held that the purpose of Rule 16 is "to encourage

17  forceful judicial management."  *Sherman v. United States*, 801 F.2d 1133, 1135 (9th Cir. 1986); see

18  also advisory committee's note to Fed.R.Civ.P. 16 (stating "explicit reference to sanctions reinforces

19  the rule's intention to encourage forceful judicial management").

20       Violations of Rule 16 are neither technical nor trivial.  *Martin Family Trust v. Heco-Nostalgia*

21  *Enterprises, Co.,* 186 F.R.D. 601, 603 (E.D. Ca. 1999).  Rule 16 is critical to the court's management of

22  its docket and prevents unnecessary delays in adjudicating cases.  *Id.*  The Ninth Circuit has emphasized

23  that a case management order "is not a frivolous piece of paper, idly entered, which can be cavalierly

24  disregarded by counsel without peril."  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th

25  Cir. 1992) (internal quotations and citations omitted).  Disregard of a court order undermines the court's

26  ability to control its docket and rewards the indolent and cavalier.  *Id.*

27       The court finds that Plaintiffs' failure to diligently prosecute this case through arbitration and

28  comply with the court's orders warrants involuntary dismissal under Rule 41.  The arbitrator has set an

1    arbitration hearing four times.  After the court denied Plaintiffs' motion to rescind the order compelling

2    arbitration on July 23, 2010, the parties returned to arbitration and engaged in discovery.   They had a

3    number  discovery disputes which the arbitrator addressed and resolved. .  The arbitrator reset the

4    arbitration hearing for February 20, 2012, after establishing deadlines to complete discovery and

5    continued the hearing until April 17, 2012, at the request of the Plaintiffs.  On February 23, 2012, when

6    counsel for Plaintiff sent his letter to opposing counsel, providing a copy to the arbitrator, the parties

7    were two depositions away from concluding all discovery.  The parties were also fifty-four days away

8    from the April 17, 2012, scheduled arbitration hearing.  Plaintiffs' refusal to go forward with the final

9    two depositions, and announced intention to return to federal court to raise "jurisdiction" issues related

10   to the Arbitration Defendants' insolvency, resulted in the arbitration hearing being suspended.  The

11   Arbitration Defendants' precarious financial condition, and near insolvency, had been conveyed to

12   counsel for Plaintiffs in September 2009, and was raised as a reason to return to federal court in

13   Plaintiffs' June 2010 motion to rescind the order of arbitration and lift stay.  While counsel for

14   Plaintiffs may have learned more information during discovery in arbitration proceedings than he had in

15   September 2009, it was not new news to the Plaintiffs in February 2012, that the Arbitration Defendants

16   may ultimately lack funds to satisfy a potential judgment.  However, the Arbitration Defendants were

17   defending themselves in arbitration, engaging in discovery and prepared to arbitrate.  Plaintiffs were not

18   prepared to arbitrate.

19           The Ninth Circuit has enunciated a five-factor test to determine when imposing the "harsh

20   penalty" of case-dispositive sanctions is warranted.  *See Henry v. Gill Indus.,* 983 F.2d 943, 948 (9th

21   Cir. 1993) (citing *Porter v. Martinez*, 941 F.2d 732, 733 (9th Cir. 1991)).  The district court must

22   evaluate: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage

23   its docket; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring

24   disposition of cases on their merits; and (5) the availability of less drastic sanctions.  The key factors are

25   prejudice and the availability of less drastic sanctions.  *Wanderer v. Johnson,* 910 F.2d 652, 656 (9th

26   Cir. 1990); *See also Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1411 (9th Cir. 1990), *cert. denied,*

27   498 U.S. 1109 (1991) (district court properly considered all of defendant's misconduct during discovery

28   in ordering default judgment).

1    The court finds that the public's interest in expeditious resolution of litigation and the court's

2    interest in managing its docket favor dismissal because Plaintiffs' failure to comply with the court's

3    orders to arbitrate has brought this case to a complete halt.  This case has been on the court's docket

4    since it was removed in June 2008, and is no closer to trial than it was on the day of removal.  The only

5    proceedings that have taken place since the court granted the Plaintiffs' motion to compel arbitration

6    and stay are the multiple status conferences and actions taken by the court, including an order to show

7    cause why the case should not be dismissed for failure to prosecute.  The amount of time the court has

8    spent to manage and move a case that has gone nowhere in more than four years has been at the

9    expense of a huge number of other litigants before the court who need and deserve adjudication of their

10   disputes.

11   The court also finds that both the Arbitration Defendants, and the non-Arbitration Defendants

12   have been prejudiced by this more than four year delay.  The Arbitration Defendants were fifty-four

13   days away from an arbitration hearing which would resolve the arbitration parties' disputes when

14   Plaintiffs' counsel brought the arbitration process to a halt.  The non-Arbitration Defendants have been

15   prejudiced by the uncertainty of this stayed federal litigation pending against them for more than four

16   years.  *See Henry*, 983 F. 2d at 948 (citing *Adriana*, 913 F.2d at 1412, and noting "defendant suffers

17   prejudice if the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere

18   with the rightful decision of the case").  Plaintiffs' failure to arbitrate their claims against the

19   Arbitration Defendants has delayed prosecution of Plaintiffs' claims against the non-Arbitration

20   Defendants.  It has interfered with the orderly resolution of this case, and has increased the costs of this

21   litigation for both the Arbitration and non-Arbitration Defendants who have had to participate in

22   preparing status reports and attend status conferences.  Thus, the court finds the third factor weighs in

23   favor of case-dispositive sanctions.

24   The fifth factor supports entering case-dispositive sanctions where the court has: (a) explicitly

25   discussed the feasibility of less drastic sanctions, explaining why they are not feasible; (b) implemented

26   alternative sanctions before ordering dismissal; and (c) warned the party of the possibility of dispositive

27   sanctions before ordering them.  *Id.* (citing *Malone v. United States Postal Service,* 833 F.2d 128, 132

28   (9th Cir. 1987), *cert. denied sub nom Malone v. Frank,* 488 U.S. 819 (1988)).  Despite this elaboration

1    on the fifth factor, however, the Ninth Circuit has found it is "not always necessary for the court to

2    impose less serious sanctions first, or to give any explicit warning." *Valley*, 158 F.3d at 1057 (citing

3    *Ariana*, 913 F.2d at 1413.

4        In this case, the court concludes that less drastic sanctions are unlikely to compel compliance

5    with two orders to arbitrate.  On December 8, 2011, the district judge entered an order to show cause

6    why this case should not be dismissed for Plaintiffs' failure to prosecute.  The Plaintiffs were thus

7    clearly on notice that the district judge was considering dismissing the case for Plaintiffs' failure to

8    prosecute.  Despite this, Plaintiffs requested a continuation of the scheduled February 20, 2012,

9    arbitration, and obtained a continuance until April 17, 2012.  Two depositions and fifty-four days shy of

10   the fourth arbitration hearing, Plaintiffs refused to go forward with the final two depositions and

11   announced their intention to go back to federal court to raise an issue addressed in the prior motion to

12   rescind the order compelling arbitration. The current motion puts a little different spin on the issue, but it

13   is the same issue about whether the Arbitration Defendants have the financial wherewithal to satisfy a

14   judgment if Plaintiffs are ever able to prove their case.

15       Plaintiffs' current motion proposes, in essence, to completely start over, dropping the

16   Arbitration Defendants as parties to this litigation, while at the same time litigating whether Plaintiffs

17   can prove any claims against them.  Plaintiffs also seek an order substituting the six individual principals

18   who are alleged to stand in the shoes of the Arbitration Defendants which Plaintiffs claim they no longer

19   intend to pursue.  Under these circumstances, the court concludes that less drastic sanctions would be

20   ineffective.

21       Case dispositive sanctions are appropriate where four factors support them, or where at least

22   three factors "strongly support" them.  *See Yourish v. California Amplifier*, 191 F.3d 983, 990 (9th Cir.

23   1999) (citing *Hernandez v. City of El Monte*, 138 F.3d 393, 399 (9th Cir. 1998)).  The court finds that

24   the first, second, third, and fifth factors strongly support dismissal.  The public policy favoring

25   disposition of cases on their merits clearly weighs against dismissal.  However, Plaintiffs' failure to

26   comply with orders compelling arbitration, even after an order to show cause issued why the case should

27   not be dismissed for failure to prosecute, has delayed this case, disrupted the court's timely management

28   of its docket, needlessly multiplied these proceedings, wasted judicial resources and the resources of

opposing counsel, and has threatened the integrity of the court's orders and the orderly administration of justice.  Sanctions less drastic than dismissal are unlikely to compel compliance with the orders to arbitrate.

For all of these reasons,

**IT IS ORDERED** that Plaintiffs' Motion to Lift Stay, File Amended Complaint, Amend Caption and Substitute Parties Pursuant to Rule 25(c) (Dkt. #114) is **DENIED**.

**IT IS RECOMMENDED** that Plaintiffs' case be **DISMISSED.**

Dated this 26th day of September, 2012.


PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE